UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PAULINE LORUSSO<br>  *Plaintiff*<br><br>   v.<br><br>LLOYD'S of LONDON d/b/a CERTAIN<br>UNDERWRITERS AT LLOYD'S, LONDON<br>  *Defendant* | Civil Action No. 1:26-cv-264<br><br><br>**COMPLAINT** |

NOW COMES the Plaintiff, Pauline Lorusso, by and through her attorneys, Poulin Hurley Makris & Lyons P.A., and hereby files this Complaint, which includes a Demand for Declaratory Judgment that coverage under a policy of insurance issued by the Defendant Lloyd's of London d/b/a Certain Underwriters at Lloyd's, London; and a claim for Breach of Contract for consequential damages resulting from the denial and the bad faith conduct associated with the denial.  In support thereof, the Plaintiff states as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties to this action are diverse and the amount in controversy exceeds $75,000.

2.     Venue is appropriate in the United States Court for the District of New Hampshire pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this case occurred in New Hampshire. Specifically, the insured property is located in New Hampshire and Pauline Lorusso is a resident of and is domiciled in New Hampshire.

### PARTIES

3.     The Plaintiff, Pauline Lorusso, is an individual residing at 1 Heather Street, Manchester, New Hampshire 03104.

1

4. The Plaintiff is the sole owner of a commercial property located at 944 Elm Street, Manchester, New Hampshire 03101 (the "Property").

5. Defendant Lloyd's of London ("Lloyd's") operates Certain Underwriters at Lloyd's, London[1] through which surplus lines underwriters are authorized to do business through the Lloyd's of London marketplace. Lloyd's has a principal place of business at One Lime Street, London, EC3M 7HA, United Kingdom and in the United States at 280 Park Avenue, East Tower, 25th Floor, New York, NY, 10017.

### FACTS

6. The Plaintiff[2] is the named insured under a policy issued by an underwriter through Certain Underwriters at Lloyd's, London, Policy No. NELL2009437-1 (the "Policy"), a true and accurate copy of which is attached hereto as Exhibit A.

7. The Policy has an effective period from November 30, 2025, to May 20, 2026.

8. The insured premises listed on the Policy is 944 Elm Street, Manchester, New Hampshire 03101 (the "Property").

9. Defendant Lloyd's of London is not licensed to issue insurance policies in New Hampshire.

10. Relative to the Plaintiff's policy, Defendant acted as a surplus lines broker that places high-risk policies that standard insurers refuse.

11. At all times relevant, the Property is a two-unit commercial property with one unit of the ground floor ("Unit One") and the other on the second level ("Unit Two").

---

[1] Lloyd's does not identify the underwriter in the Policy.  Therefore, reference to "Lloyd's" throughout this pleading is intended to refer to the underwriter and insurer.

[2] Mrs. Lorusso is elderly and entrusted the management of the Property to her adult son, who at all times relevant had Power of Attorney to act in her stead.  As such, when reference is made to the Plaintiff's actions or conduct, it is intended to refer to those of her son.

12. Units One and Two are connected by a stairway with lockable doors to each unit. There is an area in Unit Two adjacent to the stairway by which a person can enter Unit Two without using the door to the stairway.

13. The lease for Unit One did not permit the lessee, its customers, agents or employees to access Unit Two.

14. The Property is a building constructed with Joisted Masonry.

15. At all times relevant, Unit Two was undergoing renovations and Unit One was occupied by a commercial tenant.

16. Defendant issued the Policy with notice that the Property was vacant and under renovation as shown by the Commercial Property Coverage Part Declarations where in the "Business Description" is described as "Vacant - Building Under Reno."

17. The insuring agreement of the Policy provides: "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."

18. "Covered Property" includes "a. Building, meaning the building or structure described in the Declarations" and "If not covered by other insurance: (a) Additions under construction, alterations and repairs to the building or structure. . .".

19. The Policy includes a Builder Risk Coverage Form for coverage for "Building Under Construction, meaning the building or structure described in the Declarations while in the course of construction. . .".

20. The Policy includes a Business Income (and Extra Expense) Coverage Form for loss on business income, including loss of Rental Value, as well as "necessary expenses" incurred during the "period of restoration" of the insured premises.

3

21.     Both the existing structure and the improvements are subject to the Causes of Loss - Broad Form.

22.     Covered Causes of Loss includes "Water Damage, meaning accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance, that is located on the described premises and contains water or steam."

23.     Policy was intended and promises to insure the existing structure and improvements from, among other things, loss caused by water damage.

24.     The Policy contains an exclusion which excludes covered water damage for damage caused by and resulting from freezing "unless: (a) You do your best to maintain heat in the building or structure. . .".

25.     The Policy does not define, characterize or describe the clause "do your best".

26.     The Policy does not require the insured to have any particular qualifications or experience.

27.     On or around December 10, 2025, a pipe at the Property burst, causing significant water damage to the Property.

28.     The pipe was located in the space between Units One and Two with a portion of it exposed in Unit Two.

29.     The renovations in Unit Two included removal of Unit Two's dedicated heat source.

30.     Unit One had its own dedicated heat source, which was fully functional at all times relevant.

31.     Unit One's heating system was on and operating with its temperature set to no less than sixty degrees.

32. At all times relevant, the Plaintiff was aware of and took note of the regular source of heat in Unit One and believed that that heat would rise into Unit Two through the floor and ceiling juncture where the subject pipe was located.

33. At all times relevant, the Plaintiff was aware that the building's masonry walls provided a high level of heating efficiency such that they would absorb, store, and slowly release heat.

34. Prior to the date of loss, there were multiple nights when the outside temperatures were as cold or colder than on the date of loss and there was no evidence of pipe freeze.

35. Prior to the date of loss, the Plaintiff had installed insulation around the portion of the subject pipe that was exposed in Unit Two.

36. Prior to the date of loss, the Plaintiff regularly inspected Unit Two and checked the temperature with a digital device for the purpose of ensuring that heat was being maintained in Unit Two.

37. On or before the date of loss, and without the Plaintiff's knowledge or permission, a third party entered into the Property and left two windows to the outside ajar.

38. The cold air from the open window reduced the air temperature in Unit Two.

39. The window was not open on the previous days when the outside temperature was as cold or colder than those leading up to the date of loss.

40. The cold air from the open window reduced the temperature in Unit Two to the point that the pipe froze and burst.

41. The Plaintiff had done her best to maintain heat in the Building.

42. But for the acts of a third party, the loss would not have occurred.

43. The Policy does not exclude coverage for when damage is caused by the actions of a third party without the permission or knowledge of the insured.

44.     Following the water loss on or around December 10, 2025, the Plaintiff submitted a claim to Lloyd's.

45.     Lloyd's retained an engineer to inspect the origin and cause of the loss.

46.     The engineer was informed that the Plaintiff had discovered that a third party had left the window open.

47.     The engineer issued a report in which there is no reference to or analysis of the role of the open window's causative role in the loss.

48.     Lloyd's denied coverage for the loss, citing the exclusion for damage caused by and resulting from freezing. See Exhibit B, January 28, 2026 Denial; Exhibit C, March 20, 2026 Denial.

49.     Lloyd's took over a month to render its coverage determination, despite regular and repeated requests made to the representative it retained to administer the claim by the Plaintiff.

50.     Lloyd's unreasonably and in bad faith delayed adjusting the Plaintiff's claim for over a month.

51.     Without excuse and in bad faith, Lloyd's, through its third-party administrator, failed to respond to the Plaintiff's communications or advise the Plaintiff on the status of her claim.

52.     The Plaintiff learned of the denial from an attorney who had filed an adverse action against her as a result of the damage arising from the loss.

53.     Lloyd's, through its administrator, communicated the denial to the insurer for the tenant without permission of the Plaintiff and prior to ensuring that the Plaintiff was aware that the claim had been denied.

6

54. In denying the Plaintiff's claim, Lloyd's did not fully or adequately consider the exception to the exclusion or all relevant circumstances surrounding the loss.

55. Lloyd's did not consider the best efforts the Plaintiff undertook to maintain heat in the Property.

56. Lloyd's did not consider in good faith the effect of the open window on the cause of the loss.

57. Lloyd's failed to investigate the Plaintiff's assertion that the window had been open in that it failed to believe its insured and failed to interview or take statements from witnesses.

58. Lloyd's failed to have a qualified expert evaluate the role of the open window on the loss.

59. The Plaintiff has suffered and continues to suffer damages that are covered under the Policy by its terms and conditions, Lloyd's erroneous denial of coverage notwithstanding.

60. The Plaintiff has been sued by the (now) former tenant of Unit One because of the water loss and said action is pending in the New Hampshire Superior Court.

61. The tenant has canceled its lease and is vacating Unit One because of the delays caused by Lloyd's delay in determining coverage and the resultant delay in the Plaintiff acquiring funding for repairs to Unit One.

62. Lloyd's conduct and that of its administrator have caused the Plaintiff extra-contractual damages.

63. Despite being made aware of the relevant facts and circumstances surrounding the loss, Lloyd's has refused to reconsider its denial of the Plaintiff's claim, thus necessitating the instant action.

64. By way of the terms and conditions of the Policy, Lloyd's agrees that the laws of the State of New Hampshire apply to this dispute.

## COUNT I – DECLARATORY JUDGMENT

65. The Plaintiff repeats and realleges the foregoing allegations as if set forth fully herein.

66. N.H. Rev. Stat. Ann. § 491:22, I, permits a party to an insurance contract to bring a declaratory judgment action to determine the scope of an insurance policy's coverage.

67. The Plaintiff and Lloyd's entered into a valid and enforceable contract for insurance, the Policy.

68. Lloyd's knew that the Property was vacant and under renovation when the Policy was issued.

69. The Plaintiff did her best to maintain heat in the building or structure.

70. During all times relevant, heat was maintained in the building.

71. The Plaintiff suffered a covered loss to the Property.

72. Coverage under the Policy is owed.

73. Lloyd's improperly determined that the Plaintiff's claim was not covered by the Policy.

74. The Plaintiff seeks a declaration that she is entitled to coverage for the losses incurred because of December 10, 2025 pipe break.

75. As a result of the Defendant's erroneous coverage position, the Plaintiff has been forced to file the instant action and incur legal expenses.

76. The Plaintiff is entitled to recover her costs and attorney's fees pursuant to N.H. Rev. Stat. Ann. § 491:22-b.

## COUNT II – BREACH OF CONTRACT

77.     The Plaintiff repeats and realleges the foregoing allegations as if set forth fully herein.

78.     The Plaintiff and Lloyd's entered into a valid and enforceable contract for insurance, the Policy.

79.     The Policy imposes certain contractual obligations upon Lloyd's, including but not limited to, adjusting and paying for the loss the Plaintiff sustained at the Property.

80.     The Policy further contains the implied covenant that Lloyd's deal with the Plaintiff fairly and in good faith.

81.     Lloyd's failed to act in good faith, and in fact, acted in bad faith by unreasonably and erroneously denying the claim and delaying adjustment of it.

82.     Lloyd's knew that the Property was vacant and under renovation when the Policy was issued.

83.     The Plaintiff did her best to maintain heat in the building or structure.

84.     During all times relevant, heat was maintained in the building.

85.     Lloyd's did not investigate the loss beyond having an engineer provide an opinion as to original and cause of the pipe break.

86.     Lloyd's did not interview witnesses who had knowledge of the facts and circumstances surrounding the loss.

87.     Lloyd's did not consider the role of the open windows on the cause of the loss.

88.     Lloyd's rejected, ignored, chose not to consider and/or disregarded information provided by the Plaintiff's agents when evaluating the cause of the loss, namely that a third party had entered Unit Two and left two windows ajar without the knowledge or permission of the Plaintiff.

9

89. Lloyd's took over a month to inform the Plaintiff of the denial of her claim despite knowing that the Plaintiff's tenant could not operate its business until damage caused by the loss to Unit One was repaired

90. Further, Lloyd's, through its third-party administrator, allowed a party adverse to the Plaintiff to learn of the denial of coverage before the Plaintiff received notice of such denial and did so in bad faith.

91. The denial, delay and improper conduct relative to the loss and demand for coverage resulted in damage to the Plaintiff, including the loss of her tenant and rental income from that tenant.

92. Damages also include fees and interest on loans the Plaintiff had to take out to repair the Property, as well as litigation expenses related to the tenant's lawsuit against her.

93. The Defendant is liable to the Plaintiff for her loss which the Defendant should have covered under the Policy.

94. The Defendant is liable to the Plaintiff for all consequential damages, both contractual and extra-contractual, caused by the Defendant's bad faith conduct.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court:

A. Issue a judgment declaring that the loss at the Property is covered by the Policy;

B. Award the Plaintiff her reasonable costs and attorney's fees pursuant to N.H. Rev. Stat. Ann. § 491:22-b;

C. Rule that the Defendant's failure constitutes a breach of the Policy;

D. Rule that the Defendant acted in bad faith in denying the Plaintiff's claim;

E. Award the Plaintiff her direct and consequential damages caused by the Defendant in an amount to be proven at trial; and

F.   Grant such further relief as the court deems just and equitable.


Respectfully submitted,

POULIN HURLEY MAKRIS & LYONS P.A.

Dated: April 7, 2026                                   By:   /s/ Elizabeth L. Hurley
                                                                  Elizabeth L. Hurley, Esq.
                                                                  NH Bar No. 16851
                                                                  1838 Elm Street
                                                                  Manchester, NH 03104
                                                                  (603) 634-4300
                                                                  ehurley@phml.law


11